[Civ. No. 14553. Third Dist., Oct. 1, 1975.]

BETTY JO RAAB et al., Plaintiffs and Appellants, v.
BERNARD V. CASPER et al., Defendants and Respondents.

**COUNSEL**

Wallace T. Hyde for Plaintiffs and Appellants.

Beverly, Riley & Petersen and Patrick J. Riley for Defendants and Respondents.

**OPINION**

**FRIEDMAN, Acting P. J.**—Plaintiffs and defendants own adjoining foothill tracts acquired through a common grantor. Plaintiffs' parcel, about 20 acres in size, is longitudinally shaped, with its narrow dimension at the north and south ends. Mr. and Mrs. Casper, the defendants, own two separate parcels immediately to the west, one of three and one-half acres adjoining the northern portion of plaintiffs' tract, another of four and one-half acres adjoining the southern portion. Plaintiffs' amended complaint sought a mandatory injunction and damages; it alleged in effect two separate, continuing trespasses by defendants; defendants had built a 25- by 35-foot cabin entirely on plaintiffs' land, at its northwest corner near the northerly end of the common boundary; toward the southerly end of the common boundary, defendants had built a family home, approximately one-third of the premises being located on plaintiffs' land.

According to the findings, the common north-south boundary had never been surveyed or marked; the true boundary had been established through a survey by Harvey Butler filed for record in April 1972;[1] commencing in January 1970, defendants started building a small house (i.e., cabin), which was actually located across the boundary, at the

---

[1] Plaintiffs had bought and paid for this survey after the dispute arose.

northwest corner of plaintiffs' land. The court also found that in September 1970 plaintiffs complained to defendants that they believed the cabin was located on plaintiffs' property; at that time Casper had completed the foundation, exterior walls, roofs and interior partitions, septic tank and leachline, but not the interior work; Casper continued with construction of the cabin and completed it; defendants did not take the cabin site by adverse possession; defendants had not acted maliciously or willfully, but believed in good faith that they were building the cabin on their own property.

As to the cabin built at the northwestern corner of plaintiffs' land, the court concluded that defendants were good faith improvers. (See Code Civ. Proc., §§ 871.1-871.7.) Its judgment realigned the northerly common boundary to give defendants the .287 acres where their cabin was situated; awarded plaintiffs $700 as compensation for the reasonable value of the land, $500 for the cost of a survey, $750 attorney's fee and $70 per year rent until entry of judgment (slightly less than three years). Plaintiffs appeal.

Much of plaintiffs' brief on appeal consists of an evidentiary attack on the findings, including that which fixed $700 as the value of the cabin site awarded defendants. This court adheres to the rule which prevents appellate inquiry into evidentiary conflicts and requires the acceptance of trial court findings which are supported by substantial evidence. (*Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) Plaintiffs' claim of inherently improbable evidence has no merit. Nevertheless, the findings and judgment are characterized by several prejudicial errors of law which require reversal.

The good-faith-improver legislation (Code Civ. Proc., § 871.1 et seq.) was enacted in 1968. A "good faith improver" is defined as one who makes an improvement to land in good faith and under a mistaken belief that he is the landowner. (Code Civ. Proc., § 871.1.) Such an improver may seek judicial relief but has the burden of establishing his entitlement to relief; the "degree of [his] negligence" should be taken into account in determining his good faith and in determining what relief is consistent with substantial justice. (Code Civ. Proc., § 871.3.)[2] The court

---

[2]We quote section 871.3 in full: "A good faith improver may bring an action in the superior court or, subject to Section 396, may file a cross-complaint in a pending action in the superior or municipal court for relief under this chapter. In every case, the burden is on the good faith improver to establish that he is entitled to relief under this chapter, and the degree of negligence of the good faith improver should be taken into account by

may not grant relief if a setoff or right of removal would accomplish substantial justice. (Code Civ. Proc., § 871.4.) Subject to this limitation, the court may effect such adjustments in the parties' positions as are consistent with substantial justice under the circumstances; the relief shall protect the injured owner against pecuniary losses (including litigation expense) but avoid his unjust enrichment; in shaping relief, the court may consider the injured owner's future plans and his need for the land. (§ 871.5.)

We find no case law construing this legislation. It possesses decisional ancestry in the equity doctrine which grants damages but denies injunctive relief against an innocent encroachment which could be removed only at heavy cost and which does not cause irreparable damage to the injured landowner. (*Brown Derby Hollywood Corp.* v. *Hatton,* 61 Cal.2d 855, 858 [40 Cal.Rptr. 848, 395 P.2d 896]; *Donnell* v. *Bisso Brothers,* 10 Cal.App.3d 38, 45-46 [88 Cal.Rptr. 645].) It may, on occasion, be tied to the law which permits removal of fixtures erroneously and in good faith attached to the land of another. (Civ. Code, § 1013.5.)

The 1968 law adds a synthetic, somewhat alien ingredient to the concept of good faith. In its traditional sense good faith connotes a moral quality; it is equated with honesty of purpose, freedom from fraudulent intent and faithfulness to duty or obligation. (*People* v. *Nunn,* 46 Cal.2d 460, 468 [296 P.2d 813]; see 18A Words and Phrases (Perm. Ed. 1956), p. 83 et seq.) Code of Civil Procedure section 871.3 declares that the improver's "degree of negligence" should be taken into account in determining his good faith and in shaping the relief. Thus, in applying this particular legislation, good faith becomes an artificial attribute, calling for a measure of care as well as honesty. Lack of care as well as dishonesty may negate or diminish good faith. Moreover, section 871.3 calls for consideration of the degree of negligence. Without evoking conventional choices between ordinary and gross negligence, the statute invites consideration of varying intensities of negligence.

Accustomed as judges and lawyers are to equating good faith with honesty, we are not likely to consider the element of negligence unless it is specifically demanded. In a good-faith-improver suit, a set of trial court findings which omits mention of negligence becomes suspect. It

the court in determining whether the improver acted in good faith and in determining the relief, if any, that is consistent with substantial justice to the parties under the circumstances of the particular case."

supplies the reviewing court no means of ascertaining whether the trial judge really considered the improver's negligence. Failure to find on a material issue is a fundamental defect, requiring reversal. (See cases cited 4 Witkin, Cal. Procedure, § 337, p. 3139.)

■ Here the trial court found that defendants "did not act maliciously, intentionally or willfully in constructing the small house [cabin], but acted in the good-faith belief that they were constructing said house on their property." The lack of any reference to negligence arouses appellate suspicion that negligence may have been neglected.

The suspicion is confirmed by evidence supporting an inference of negligence on the part of Mr. Casper, who built the cabin. Some 10 years earlier he had indulged in assumptions regarding the boundary line to the south; these assumptions had led him to install part of the yard around his home, part of his driveway and utility lines on the land of plaintiffs. He admitted on the witness stand that he had never known or ascertained the location of the property corners. He had extrapolated his easterly boundary from a line between a jack pine and a manzanita tree; he based this belief on an oral statement made by the seller when he bought the land in 1959. In September 1970 plaintiffs first observed Mr. Casper's partially completed cabin and warned him that he was building on their property. Up to that point he had spent $1,956.28 on the cabin. He disregarded the warning and spent an additional $2,206.85 to complete the cabin. He did so without a survey and without offering to share in the cost of a survey. Plaintiffs spent $1,757.20 for the survey, which the trial court later accepted as the true boundary line.

There is an analogy here to the encroachment decisions which point out that continuation of the offending construction in defiance of the injured owner's opposition is inconsistent with good faith. (*Brown Derby Hollywood Corp.* v. *Hatton, supra,* 61 Cal.2d at p. 859; *City of Dunsmuir* v. *Silva,* 154 Cal.App.2d 825, 828 [317 P.2d 653].) The good-faith-improver legislation of 1968 was drafted and submitted by the California Law Revision Commission, which accompanied section 871.1 with a comment fully consistent with the good faith concept described in the encroachment decisions. We append the Law Revision Commission's comment in the margin.[3]

---

[3]"Under this section, a person is not a 'good faith improver' as to any improvement made after he becomes aware of facts that preclude him from acting in good faith. For example, a person who builds a house on a lot owned by another may obtain relief under this chapter if he acted in good faith under the erroneous belief, because of a mistake of

At this juncture of the case the findings declare: "That at the time of commencement of the construction of the small house, Defendant reasonably believed he was building the same on his land and had made reasonable effort to confirm that fact." The declaration is pregnant with an admission that at some later time defendants no longer possessed that reasonable belief. Whatever defendant Casper's good faith and whatever his reasonable care preceding the warning of September 1970, these elements underwent a transformation after he received that warning.

This appeal presents the precise situation described in the Law Revision Commission's comment (fn. 3, *ante*), that is, a project characterized by good faith at its inception (according to the trial court findings) but suffering a shift in that characteristic when a warning of possible trespass or encroachment is received before completion. In choosing to proceed with his project in the face of the owner's warning, the improver exposes the owner to injury not measurable in dollars alone. The owner may ultimately receive the reasonable value of his lost land. His injury lies not so much in financial loss as in deprivation of a choice inherent in ownership. Ownership of land includes the freedom not to dispose of it. The good-faith-improver legislation gives the improver something akin to a private power of eminent domain. (See *Donnell* v. *Bisso Brothers, supra,* 10 Cal.App.3d at p. 46.) The greater the improver's investment, the greater his potential appeal to the court's conscience. The law should not permit him to worsen the true owner's position after the latter has warned him of a possible trespass. Hence, deliberate augmentation of an initial investment after a warning of trespass is a legally significant factor, one which a trial court should not ignore.

In weighing the grant, denial or apportionment of relief, a trial court should consider any interim warning, the character and relative cost of the improvements made before and after the warning and the unitary or separable character of the improvements. As did Solomon, the law should recognize that a unitary improvement cannot be chopped in half—one part entitled to statutory relief, the other not. Despite the comment of the Law Revision Commission, it is not practical to fasten separate findings of good and bad faith upon separate physical parts of an indivisible physical project. The court may conclude that the

law or fact, that he was the owner of the land. However, if the same person makes an additional improvement after he has discovered that he is not the owner of the land, he would not be entitled to relief under this chapter with respect to the additional improvement."

improver's intransigence equates with negligence rather than dishonesty. In view of the record, the trial court's failure to make a finding on negligence is reversible error.

■ We sustain a separate claim of error. Attached to plaintiff's property was a 40-foot easement for use of an existing roadway which began at a county road west of both properties, ran easterly across the north end of defendants' property and traversed the northwest corner of plaintiffs' tract, that is, the identical .287 acre on which defendants built the cabin and for which the trial court awarded plaintiffs $700. On appeal plaintiffs charge that loss of the land underlying the easement destroys their access by road to the northern portion of their tract. Defendants' brief does not deny this charge but suggests only that there is "room" between the cabin and the north boundary by which plaintiffs can get to their remaining property. The judgment does not reserve to plaintiffs any access easement across the .287 acre awarded defendants. The physical availability of access "room" without a legal right has scanty value. The findings and judgment reveal no recognition of this easement and no recognition of the practical loss entailed by its truncation. Apparently it was not included as an element in the $700 valuation attributed to the .287 acre. In this respect the judgment falls short of the substantial justice required by section 871.5.

■ Plaintiffs charge error in the allowance of survey expense of only $500 when the actual cost of the survey was $1,757.20. The court awarded plaintiffs $500 "as and for survey costs." Code of Civil Procedure section 871.5 contains the following declaration: "In protecting the owner of the land against pecuniary loss, the court shall take into consideration the expenses the owner of the land has incurred in the action in which relief under this chapter is sought, including but not limited to reasonable attorney fees."

The $500 award of survey expense impliedly recognized the survey's legitimacy as a means of protecting plaintiffs against loss and as an expense of the lawsuit. There was no conflict in the evidence that the actual cost of the survey was $1,757.20. The court did not find that the survey was not reasonably worth this sum nor did it find that $500 was the maximum reasonable worth. We do not mean to imply that reasonable value is the sole yardstick of the award. The prime statutory objective is "substantial justice to the parties under the circumstances of the particular case." (Code Civ. Proc., § 871.5.) This objective requires a trial court to weigh competing values; it will often entail loss to one side

or the other. In this case the survey was necessitated by defendants' act of constructing their cabin on plaintiffs' land. According to nonconflicting evidence, defendant Casper defied plaintiffs' warnings of possible trespass and continued to construct the cabin without a survey. Under the circumstances—and assuming that the survey cost was reasonable—the imposition of $1,257.20 on plaintiffs and only $500 on defendants is inconsistent with substantial justice.

■ As to defendants' dwelling house to the southward, the court found that approximately 10 years before the lawsuit defendants had established part of their driveway, utility lines, yard and landscaping on plaintiffs' land. It concluded that the occupancy had been open, obvious and hostile, had lasted for more than five years, during which time defendants had paid all taxes. Accordingly, the court held that defendants had acquired by prescription an "easement" covering their driveway, utility lines and yard.

The evidence and findings do not sustain the award. ■ There is a difference between a prescriptive use of land culminating in an easement (i.e., an incorporeal interest) and adverse possession which creates a change in title or ownership (i.e., a corporeal interest); the former deals with the use of land, the other with possession; although the elements of each are similar, the requirements of proof are materially different. (See *Glatts* v. *Henson,* 31 Cal.2d 368, 371-372 [188 P.2d 745]; *Cleary* v. *Trimble,* 229 Cal.App.2d 1, 6 [39 Cal.Rptr. 776]; 7 Cal.L.Rev. 65.)

■ As the difference between prescriptive use and adverse possession is sometimes obscure, so is the difference between an exclusive easement and outright title. The former is a right to use property of another; every incident of ownership not inconsistent with enjoyment of the easement is reserved to the owner of the servient tenement; the latter may make use of any of the property which does not unduly interfere with the easement. (3 Witkin, Summary of Cal. Law, Real Property, §§ 340, 352, 353.) An exclusive interest labeled "easement" may be so comprehensive as to supply the equivalent of an estate, i.e., ownership. In determining whether a conveyance creates an easement or estate, it is important to observe the extent to which the conveyance limits the uses available to the grantor; an estate entitles the owner to the exclusive occupation of a portion of the earth's surface. (See *Elliott* v. *McCombs,* 17 Cal.2d 23, 28 [109 P.2d 329]; *Yuba Inv. Co.* v. *Yuba Consol. G. Fields,* 184 Cal. 469, 474-475 [194 P. 19]; *Van Slyke* v. *Arrowhead etc. Power Co.,*

155 Cal. 675, 678-679 [102 P. 816]; Rest., Property, § 471.) " ' "If a conveyance purported to transfer to A an *unlimited* use or enjoyment of Blackacre, it would be in effect a conveyance of ownership to A, not of an easement." ' " (3 Powell on Real Property, § 405, p. 389, quoted in *Russell* v. *Palos Verdes Properties,* 218 Cal.App.2d 754, 772 [32 Cal.Rptr. 488].)

In this case defendants had installed on plaintiff's side of the common boundary not only utility lines and part of the driveway to their home, but also part of their yard and landscaping. The judgment declares that defendants are entitled to an easement for roadway and utility lines "together with an easement for the maintenance of lawn, fences, shrubs, fruit trees, and landscaping around the CASPER house . . . ." Although adroitly phrased to avoid the language of a grant of title, the last-quoted clause was undoubtedly designed to give defendants unlimited use of the yard around their home. Defendants doubtless did not intend plaintiffs, owners of the nominal servient tenement, to picnic, camp or dig a well in their yard. They doubtless did not intend to own a house on one side of the boundary with an unmarketable yard on the other. The findings and judgment were designed to exclude plaintiffs from defendants' domestic establishment, employing the nomenclature of easement but designed to create the practical equivalent of an estate.

Achievement of that objective required proof and findings of the elements of adverse possession, not prescriptive use. The required elements were exclusive possession, adverse to the true owners, color of title or claim of right, continuity for five years and payment of taxes. (Code Civ. Proc., § 325; 3 Witkin, Summary of Cal. Law, Real Property, §§ 47-61.)

The findings recite no exclusivity of use. For that reason alone, they will not support a judgment of adverse possession.

The findings declare that defendants "were assessed for and did pay taxes . . . on all of the improvements which were separately assessed . . . ." This finding is completely contradicted by the evidence. Both sides placed their county assessment notices in evidence. These notices show that the affected parcels were assessed by the assessor's parcel numbers. There is no proof whatever that defendants' domestic grounds were assessed separately to defendants, divorced from the assessor's parcel comprising plaintiffs' property.

■ Where only an easement by prescription is claimed, the easement is considered appurtenant to the claimant's land for tax purposes and need not be assessed separately. (*Taormino* v. *Denny,* 1 Cal.3d 679, 686, fn. 3 [83 Cal.Rptr. 359, 463 P.2d 711]; *Costa* v. *Fawcett,* 202 Cal.App.2d 695, 701-702 [21 Cal.Rptr. 143].) Where the claim is adverse possession and not mere prescriptive use, payment of taxes for the statutory period is essential. (*Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, 707 [336 P.2d 525].) ■ As a general rule, where adjoining lots are assessed merely by numbers and without reference to a survey, the claimant cannot establish adverse possession because he cannot establish payment of taxes. (*McDonald* v. *Drew,* 97 Cal. 266, 269 [32 P. 173]; *Wilder* v. *Nicolaus,* 50 Cal.App. 776, 785 [195 P. 1068].) Nevertheless, where one party is visibly in possession of land under a claim of right and has placed valuable improvements on the land, the natural inference is that the assessor did not base his assessment on the true boundary but valued the land and improvements visibly possessed by the claimants. (*Price* v. *De Reyes,* 161 Cal. 484, 489-490 [119 P. 893]; *Drew* v. *Mumford,* 160 Cal.App.2d 271, 276 [325 P.2d 240].) Thus, although the finding relative to taxes is untrue, defendants are not precluded from proving payment of taxes.

Both phases of the judgment are characterized by serious error and both must be reversed. Relative to the area around defendants' dwelling house, the trial court and parties should give separate consideration to the yard and landscaping as distinguished from the easements for driveway and utility lines. To the extent that defendants are relying on adverse possession rather than prescriptive use, the burden is on defendants to show that they paid taxes assessed against the improvements. (*Glatts* v. *Henson, supra,* 31 Cal.2d at p. 372.)

Judgment reversed.

Regan, J., and Evans, J., concurred.