Filed 7/29/21  Margulies v. Sherwood Development Co. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DAVID MARGULIES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SHERWOOD DEVELOPMENT CO., L.P., <br><br> Defendant and Appellant. | 2d Civil No. B304005 <br> (Super. Ct. No. 56-2018-00510741-CU-OR-VTA) <br> (Ventura County) |

David Margulies and 714 West Potrero, LLC (collectively, Plaintiffs), appeal from the judgment after the trial court refused to award them trail easements across lots owned by Sherwood Development Company—despite a jury confirming the existence of the easements.  They contend the court erred when it negated the jury's verdict.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### *The properties and trails at issue*

In the early 1980s, Sherwood bought 1,900 acres of land in the Santa Monica Mountains of southeastern Ventura County (County).  It planned to develop a golf course and build 622

homes on the land.  Part of the development has been completed, but much of the land remains undeveloped save for a "patchwork of equestrian and hiking trails."  Among the undeveloped parts of Sherwood's land is Tract 4409-8, which encompasses just over 150 acres.

A 57-acre ranch lies directly north of Tract 4409-8. The ranch was developed more than a century ago, and has gone through a series of owners since then.  Margulies bought the ranch in 2015, and transferred ownership to 714 West Potrero.[1]

Horseback riding and hiking trails traverse much of the area.  Among the trails are eight segments extending from the ranch across Tract 4409-8 (denoted segments 1, 2, 3, 4A, 4B, 6, 7, and 9).  For decades, various ranch owners and their employees and guests have used these trails.  Photographs dating back to the 1940s also show the trails.

*Sherwood's development plan for Tract 4409-8*

Two decades after Sherwood purchased Tract 4409-8, County planning officials approved the company's development plan for the tract—a process that took 18 years.  The approved plan includes 11 lots that vary in size from two to 23 acres, and specifies the location and size of the building pad on each.[2]  It also requires more than 95 percent of each lot to remain open space.

A fire road traverses Tract 4409-8, wandering across the area where Broadhaven Street will be built to connect the 11 lots.  The street will be constructed at a different elevation and in slightly different places than the fire road.  As part of its approval of Tract 4409-8, the County approved a detailed grading plan that

---

[1] Margulies is the sole owner of 714 West Potrero.

[2] The building pads average a half-acre in size.

2

will require Sherwood to take dirt from mountaintops and fill valleys to create the 11 building pads and Broadhaven Street.

In 2016—the year after Margulies bought the ranch and some 10 years after County officials approved the development plan for Tract 4409-8—Sherwood personnel saw an equestrian riding on trail segments 1 and 2. They also discovered that someone had bulldozed a path between the fire road and the two segments. They constructed fences to block access to the trails.

*Jury trial phase*

Plaintiffs sued Sherwood to challenge its construction of the fences and to confirm prescriptive easement rights over the trail segments. The parties agreed that the existence of easements would be tried by the jury, and if there was a verdict in Plaintiffs' favor the trial court would subsequently determine whether judgment should be entered on the verdict. They also agreed that during the bench trial phase the court could consider the evidence presented to the jury plus additional evidence to be presented after the verdict.

During the jury trial, Sherwood president Nathan Stockmeir testified that the company could not develop Tract 4409-8 if Plaintiffs were granted easements over trail segments 1, 2, 6, and 7. He explained that all of the lots in the tract could be affected if the company could not grade the area where a segment was located. And until the lots could be built up with dirt from grading, the approved building pad locations were floating in the air. Broadhaven Street similarly could not be built without dirt from the areas to be graded.

Stockmeir further explained that, to accommodate both the trail segments and open space requirements, lot lines

3

would have to be changed. And "[i]f you have to have an easement across the road, you're unable to build the road," which, in turn, could "affect all of [Tract] 4409-8." But Sherwood could not move Broadhaven Street since it was part of the approved development plan.

In short, Sherwood would be unable to develop Tract 4409-8 if the easements were confirmed. Though the company could theoretically accommodate the trail segments, that would be possible only if it "change[d] every pad and every lot line." It would also require going through the entire approval process again, which "would open up each tract map to be looked at again with current standards and everything, and everything could change at that point."

Jurors nevertheless confirmed prescriptive easements as to trail segments 1, 2, 4A, 6, 7, and 9. They also found that the easements had not been abandoned. The jurors did not specify when the easements arose.

*Bench trial phase*

During the bench trial phase, a civil engineer testified that modifying Sherwood's tract map to accommodate the trails might be possible, but changes to facilitate both the trails and Sherwood's proposed development could not be accomplished by minor modifications. Accommodating the trails would be unlikely if the same lot lines were used.

Sherwood suggested that the trial court use its equitable powers to move the location of the trail segments to accommodate the building pads and Broadhaven Street. Plaintiffs objected.

The trial court found that lots 51 and 55 were most impacted by the easements. Trail segment 4A cut off about 20

4

percent of the building pad on lot 51. The pad could not be moved back because the area behind it was hillside and dedicated open space. And there was no evidence showing how the lot could otherwise accommodate the trail: "[I]f it could be done, the result would be a residential property with a horse trail running through the heart of it." (Italics omitted.) But "[c]ommon logic suggests that few potential homebuyers would be interested in a multimillion-dollar property with an equestrian/hiking trail just a few feet outside of the residence [on which they] would not be able to do any of the things . . . that homeowners typically do in their yard—e.g., fence the curtilage, grow a lawn, plant flowers and trees, or build a patio, deck[,] or spa."

Trail segments 6 and 7 would have similar impacts on lot 55. The building pad for that lot is bordered on three sides by a hillside, Brookhaven Street, and lot 54, making it impossible to move the pad in any of those directions. The pad abuts dedicated open space on the fourth side, and there was no indication that the County would approve moving the pad into that space. Relocating segments 6 and 7 was not an option due to Plaintiffs' refusal to consent, and because relocation would require more than "a slight deviation" from their present locations. An easement over segments 6 and 7 would thus "substantially diminish the use and enjoyment of [l]ot 55, impede or prohibit the development of [it], and effectively negate the marketability of the property."

Based on these impacts, the trial court determined that Plaintiffs were not entitled to prescriptive easements over trail segments 4A, 6, and 7. "[A]s a practical matter," such easements would "so substantially impair the use of [Sherwood's] property as to be a possessory interest." And without those easements Plaintiffs could not reach public lands across

5

Sherwood's land.  The remaining trail segments were thus of no use to Plaintiffs.  The court accordingly refused to recognize any of the easements confirmed by the jury, and entered judgment for Sherwood.

## DISCUSSION

Plaintiffs contend the trial court erred when it declined to award them the use of easements confirmed by the jury because:  (1) it relied on inapplicable law, (2) substantial evidence does not support its findings, and (3) it extinguished easements that did not directly impact Sherwood's property.  We disagree with all three contentions.

"[T]he successful claimant of a prescriptive easement gains . . . the right to make a specific use of someone else's property." (*Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1261.)  It is a right restricted to a "limited" and "defineable use or activity upon another's property, which . . . must be less than the right of ownership." (*Ibid*., italics omitted.)  But "[i]f the prescriptive interest . . . is so comprehensive as to supply the equivalent of an estate, the claimant must establish the elements of adverse possession, not those of a prescriptive easement." (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1033 (*Hansen*).)  Whether the trial court correctly concluded that Sherwood showed that Plaintiffs' easements are so comprehensive that they supply the equivalent of an estate is a factual question we review for substantial evidence.  (*Id*. at p. 1028.)

*The trial court applied the correct law*

We reject Plaintiffs' contention that the trial court relied on inapplicable law when it declined to award them easements over Sherwood's property.  Before a claimant can be awarded a prescriptive easement, a court must inquire whether

6

the easement "'completely prohibits the [the property owner] from using that part of their land.' [Citation.]" (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1094 (*Harrison*), alterations omitted; see also *Hansen*, *supra*, 22 Cal.App.5th at pp. 1032-1036; *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1304-1308 (*Mehdizadeh*); *Silacci v. Abramson* (1996) 45 Cal.App.4th 558, 562-564 (*Silacci*); *Raab v. Casper* (1975) 51 Cal.App.3d 866, 876-878 (*Raab*).)  That Plaintiffs disagree with the trial court's conclusions after it undertook the requisite inquiry does not mean the court relied on inapplicable law.

> *Substantial evidence supports the trial court's findings*

Substantial evidence supports the court's conclusions. Trail segment 4A cuts through lot 51, carving out about 20 percent of the lot's half-acre building pad.  A steep hillside prevents Sherwood from moving the building pad back, and there was no evidence showing that the pad could be moved in another direction.  And if the pad were to remain in its approved location the trail would run through its front yard.  The easement would thus prevent the eventual purchaser of the lot from using the property to do things homeowners "typically" do around their homes:  "fence the curtilage, grow a lawn, plant flowers and trees, or build a patio, deck[,] or spa."

Lot 55 would be impacted even more.  Trail segments 6 and 7 cross the building pad on that lot, dividing it into two areas of approximately equal size.  It is physically impossible to move the building pad in any of three directions, and it is infeasible to move it in the fourth direction since that area is dedicated open space.  Keeping the building pad in its approved location is impossible because Plaintiffs refused Sherwood's offers to relocate the trails to another portion of the lot, and moving

7

them over Plaintiffs' objection would be more than a "slight deviation." (See *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 712 (*Applegate*) ["slight deviation" from historic location does not defeat an easement]; *Matthiessen v. Grand* (1928) 92 Cal.App. 504, 510 [relocation of 20 feet can be more than a slight deviation].) Thus, if easements over trail segments 6 and 7 were confirmed, Sherwood would be left without a usable building pad on lot 55.

Confirming easements over the trail segments would also have other impacts. Nine of the lots in Tract 4409-8, and Broadhaven Street, could not be developed because the building plan requires grading the areas where the trail segments lie. Accommodating the segments in their extant locations would require changing the grading for every home site and moving all of the approved lot lines. It took more than 18 years for Sherwood to gain the County's approval of its tract map. Since then, the County's development requirements have changed "multiple times." There is thus no guarantee that the County would approve these major modifications to the tract map, substantially impairing Sherwood's use of the entire tract.

*Raab*, *supra*, 51 Cal.App.3d 866 is instructive. In that case the defendants claimed an easement over land on which they had built utility lines, a driveway, and part of their yard and landscaping. (*Id*. at p. 877.) Those improvements had the effect of excluding the plaintiffs from that portion of their land, which gave the defendants the "practical equivalent of an estate." (*Ibid*.)

Other cases are in accord. In *Silacci*, *supra*, 45 Cal.App.4th at pages 560-561 and 564, the Court of Appeal reversed the grant of an "exclusive prescriptive easement" to the defendants to use the plaintiffs' property as their own back yard because a fence excluded all others—including the plaintiffs—from

the property.  In *Mehdizadeh, supra*, 46 Cal.App.4th at pages 1305-1306, the court similarly reversed the finding of a prescriptive easement because it would "divest the [defendant-landowners] of nearly all rights that owners customarily have in residential property," including access to the land and the ability to build on or cultivate it.  Perhaps most similar to the instant case is *Harrison, supra*, 116 Cal.App.4th 1084.  In that case, the defendant erected no fence to exclude the plaintiffs from their property, but her landscaping of the area over which she claimed an easement nevertheless "effectively prevent[ed] [them] from determining how the area . . . [was] to be used." (*Id.* at p. 1094.)

The same is true here.  The trial court reasonably concluded that confirming Plaintiffs' easement rights over trail segments 4A, 6, and 7 will effectively prevent Sherwood from developing lots 51 and 55.  It would also severely hinder—if not prohibit—the development of other lots in Tract 4409-8 due to the intertwined nature of the grading the development requires.  Such limitations would grant Plaintiffs the "practical equivalent" of an estate over at least two 20-acre lots—and possibly even more of Sherwood's lands—something that cannot be gained by a prescriptive easement.

Plaintiffs counter that the principles set forth in *Raab, supra*, 51 Cal.App.3d 866 and its progeny do not apply here because easement rights are judged based on the use of the servient estate at the time they arose, not the planned use of that estate.  (See *Brown Derby Hollywood Corp. v. Hatton* (1964) 61 Cal.2d 855, 860.)  But when it confirmed prescriptive easements as to trail segments 1, 2, 4A, 6, 7, and 9, the jury did not specify when the easements arose.  And from its statement of decision it is clear that the trial court inferred that they arose *after* the County

9

approved Sherwood's development plan in 2006. That prior ranch owners and their employees and guests intermittently used the trails before 2006 does not negate the reasonableness of that inference. We must accordingly uphold it. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.)

*The trial court did not err when it refused to confirm easements over the remaining trail segments*

Finally, we reject Plaintiffs' contention that the trial court erred when it refused to confirm easements over trail segments 1, 2, and 9 (which do not directly impact Sherwood's development plans) since they cannot be used for their contemplated purpose—i.e., to reach the public lands of the Santa Monica Mountains—without segments 4A, 6, and 7. The scope of an easement is defined by its historic use. (*Applegate*, *supra*, 146 Cal.App.3d at p. 711.) Plaintiffs sought an injunction granting them easements "to utilize the trails . . . to complete the 'loop' trail and in order to cross over the Sherwood [p]roperties *into the Santa Monica Mountains* for equestrian and hiking uses." (Italics added.) They cannot now claim that easements over trail segments 1, 2, and 9 should be confirmed based on some different use or purpose. (*Ibid.*; see also *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, 1048 [easement must be consistent with historic use].) Substantial evidence supports the trial court's refusal to award Plaintiffs easements over all of the trail segments confirmed by the jury.[3]

---

[3] Given our conclusion, we do not consider the merits of the issues raised in Sherwood's cross-appeal.

10

DISPOSITION

The judgment is affirmed.  Sherwood shall recover its costs on appeal.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

11

Mark S. Borrell, Judge

Superior Court County of Ventura

_____


Morgan, Lewis & Bockius, Thomas M. Peterson, Charles J. Malaret; Law Office of K.M. Neiswender and Kate M. Neiswender for Plaintiffs and Appellants.

Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Defendant and Appellant.