Filed 7/17/14  Seraji v. Demirjian CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARJANG SERAJI, as Trustee etc., | |
| Plaintiff and Appellant, | G048611 |
| v. | (Super. Ct. No. 30-2011-00489412) |
| SHANE DEMIRJIAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Reversed in part and affirmed in part and remanded with directions.

Mollis & Mollis and Charles A. Mollis for Plaintiff and Appellant.

Niebow Law, Steven N. Niebow and R. Timothy O'Connor for Defendant and Appellant.

\*          \*          \*

It is often said that good fences make good neighbors. One might wonder whether there actually is such a correlation between good fences and good neighbors and, if so, whether causality runs in the opposite direction (i.e., maybe good neighbors build good fences). But it cannot be denied that a good fence accurately demarcating the boundary between the parties' real properties in this case could have avoided substantial expense and grief. Defendant Shane Demirjian built a wall and patio encroaching on the undeveloped property of his future neighbor. Plaintiff Arjang Seraji[1] subsequently purchased the undeveloped property, discovered the encroachment, and sued Demirjian. The lawsuit concluded with a judgment in favor of Seraji, ordering the removal of the encroachment and awarding damages under several legal theories (trespass, nuisance, and ejectment).

Demirjian appeals, claiming (1) Seraji's claims are time-barred by a three-year statute of limitations (Code Civ. Proc., § 338, subd. (b)), and (2) the judgment provides a double recovery to Seraji, who should have been forced to elect between his remedies prior to trial. Seraji, dissatisfied with the extent of his victory, cross-appeals, asserting (1) the jury's special verdict was inconsistent with regard to his percentage of comparative negligence on the various causes of action, (2) the court erred in excluding certain proposed trial exhibits, and (3) Seraji should have been allowed to recover attorney fees pursuant to Civil Code section 3334. We agree with Demirjian's contentions regarding the statute of limitations as applied to Seraji's trespass and nuisance causes of action. We therefore reverse the judgment to eliminate the recovery of damages on those causes of action, and direct the trial court to enter a modified judgment reflecting the elimination of damages on Seraji's trespass and nuisance causes of action. Otherwise, the judgment is affirmed.

---

[1] Seraji acts as trustee for the RER Children's Trust, which is the true owner of the real property at issue; we refer to Seraji as the owner for the sake of convenience.

FACTS

*Evidence at Trial*

2085 Temple Hills Drive (the Demirjian Property) and 2095 Temple Hills Drive (the Seraji Property) are next to each other in Laguna Beach, California. Demirjian purchased the Demirjian Property in May 2004.

The encroachment at issue consists of a two-and-one-half foot high wall and a portion of a concrete patio. Demirjian describes the wall as a "stub wall to sit on." The wall is 60 to 70 feet long. The encroachment is a wedge-shaped section of the Seraji Property (almost a right triangle, except with a curved hypotenuse) that is 15.1 feet wide at its widest point and 3.7 feet at the ends of the wedge.[2] According to the operative complaint, the total encroached upon area is 405 square feet. Demirjian claimed he constructed the rear patio and stub wall for safety reasons, such as a "cliff" just beyond the wall and wildlife in the undeveloped area bordering the Demirjian Property. Demirjian did not research his property line when constructing these improvements, but "basically squared off [his] backyard from the neighbor's back wall to the side of [his] house." Demirjian did not attempt to notify the owner of the Seraji Property. "I thought it was the county['s] property" next to mine and "in my mind I wasn't encroaching on anybody's land." "It was a big mistake." According to expert witness testimony, it would cost between $4,689 and $10,000 to remove the encroachment from the Seraji Property.

---

[2] An April 2011 encroachment survey, admitted as exhibit 2 at trial, illustrates the encroachment. We have attached a copy of the survey as an appendix to this opinion. The copy included in the respondent's appendix is not marked as an exhibit, but there is no assertion in the appellant's briefs that this is not the document that was admitted as exhibit 2.

Demirjian testified it was about August 2007 when he constructed his rear patio and wall. According to Demirjian, it took two to three weeks to complete this project. In his testimony, Seraji indicated he "believe[d] it was maybe 2007" when the encroachment onto the Seraji Property was built. As described below in more detail, this is consistent with Seraji's pleadings, which allege 2007 as the estimated date of construction. There were no permits or other documentation to confirm the date of construction.

In May 2010, Seraji purchased the Seraji Property. At the time, the Seraji Property was a large, empty lot with brush and canyons. "It was just an open field with brushes, grasses, a bunch of chaparral. You could barely walk the hill." Seraji "probably" saw Demirjian's patio at the time he inspected the Seraji Property prior to purchasing it, but it appeared to Seraji that it was appropriately placed and did not encroach on the Seraji Property.

Seraji planned to construct a residence at the Seraji Property. He relied on his brother-in-law, Nick Shahrestany, to manage and oversee construction details. In April 2011, a survey conducted at Seraji's instruction indicated there was an encroachment on the Seraji Property. Prior to this time, Seraji was unaware there was an encroachment.

After discovery of the encroachment, Shahrestany struggled to contact Demirjian, who had apparently leased the Demirjian Property to a tenant. Once a phone call finally connected the two men, Demirjian first claimed it was his land, then claimed the encroachment was present when he bought the Property, then offered to buy the portion of the Seraji Property that had been encroached upon. Demirjian refused to remove the encroachment, which Shahrestany insisted was necessary for reasons peculiar to local regulatory requirements and the architectural plans for the Seraji Property. Demirjian responded that he thought he had "tenure" and would contest the matter in court. On June 24, 2011, an attorney for Seraji wrote a letter to Demirjian demanding the

4

removal of the "patio area which encroaches on my client's property." This was just the beginning of a long legal fight culminating in this appeal.

While the lawsuit was pending, construction continued on the Seraji Property. At the time of trial, approximately $7 million had been spent and the project was nearly completed. According to Seraji's percipient and expert witnesses, plans had to be changed because Demirjian refused to remove the encroachment, resulting in significantly higher costs and diminished features at the Seraji Property. None of the issues raised on appeal, however, pertain to the amount of damages allegedly caused by the encroachment, so we need not describe the lengthy portions of the record contesting this question (e.g., construction witnesses, appraisers).

*Procedural History*

On July 7, 2011, Seraji filed his initial complaint "in ejectment and for damages" against Demirjian. This complaint alleged that "[i]n or around 2007, and within five years next immediately preceding the commencement of this action," Demirjian "appropriated and took possession" of approximately 405 square feet of Seraji's land to build a patio area. Demirjian refused Seraji's request to surrender the land and remove the patio area. Seraji specifically sought "restitution of the premises" and costs. Demirjian's answer to the initial complaint included a statute of limitations affirmative defense.

In February 2012, Seraji successfully moved for leave to file an amended complaint; the amended complaint was actually filed on March 2, 2012. The first amended complaint featured four causes of action (although the last was actually just a remedy): (1) ejectment and damages; (2) continuing trespass; (3) continuing private nuisance; and (4) permanent injunction. All of the causes of action pertained to the same encroachment by Demirjian onto the Seraji Property. This pleading (which proved to be the operative complaint at trial) slightly changed the wording with regard to Demirjian's

5

alleged encroachment, claiming that the encroachment occurred "[i]n, around or after 2007" or "[o]n or after July 9, 2007" (as compared to the initial complaint's verbiage of "[i]n or around 2007"). Demirjian's answer to the operative complaint included a statute of limitations affirmative defense.

Before trial began in April 2013, the court denied Demirjian's motion for judgment on the pleadings based on the running of the statute of limitations. Demirjian pointed out that the complaint identified July 2007 as the date of encroachment and claimed that the applicable statute of limitations for all causes of action was three years. Seraji argued that the encroachment constituted a continuing trespass and nuisance, whose damages only manifested in 2011 when Seraji tried to develop the Seraji Property.

Midway through the jury trial, Demirjian moved for "directed verdict,"[3] arguing the three-year statute of limitations precluded Seraji's claims. "[P]laintiff's case shows that the construction was in 2007. The complaint was filed in 2011. Therefore, it is outside the three-year statute of limitations." Seraji argued "that whether a trespass is continuing or permanent, is a question of fact. In doubtful cases a trespass can be deemed to be a continuing trespass." Seraji's counsel identified two factors in support of his right to bring his claim as a continuing trespass/nuisance: (1) damages were not suffered by Seraji until "the construction actually got started on this project in 2011" and (2) the trespass/nuisance could be abated "in one day or two days for less than" $10,000. The court denied the motion, concluding the statute of limitations issue was a question of fact.

---

[3] Technically, this motion was one for nonsuit. (See Code Civ. Proc., §§ 630, subd (a) [directed verdict motion made after all evidence presented], 581c [nonsuit motion brought after plaintiff's presentation of evidence].)

6

On May 1, 2013, the jury completed special verdict forms as to the trespass and nuisance causes of action. The jury made findings resulting in liability on both counts. In the only questions pertaining to the statute of limitations defense, the jury answered "yes" to the following question on both verdict forms: "Did the harm or damage to Plaintiff . . . caused by Defendant . . . occur within three (3) years of the commencement of the Lawsuit on July 7, 2011?" The jury was not asked to decide when construction of the encroachment was completed, whether the encroachment was intended to be permanent, whether the costs to abate the encroachment were reasonable, or whether the encroachment was "permanent" or "continuing,"

The special verdict forms separately asked the jury to establish Seraji's damages and assess Seraji's comparative negligence. This practice resulted in two different awards of damages. As to the trespass cause of action, the jury found: (1) $1,594.44 in past damages ("including Expenses and Out-of-Pocket Costs"); (2) $227,583 in present damages ("including Expenses and Out-of-Pocket Costs and Diminution in Value of the Property"). Conversely, as to the nuisance cause of action, the jury awarded $279.65 and $5,835.36 for the same two categories of damages, respectively. Confounding the issues further, the jury found Seraji to be 75 percent at fault for the trespass damages but only 10 percent at fault for the nuisance damages.

The court entered judgment in May 2013, based upon the special verdict forms and its own findings as to the ejectment cause of action. The court, taking into account the jury's comparative negligence findings, awarded $57,294.36 on the trespass cause of action and $5,503.01 on the nuisance cause of action. Pursuant to the ejectment cause of action, the court ordered Demirjian to "remove that portion of the Wall and Patio Deck that encroaches upon" the Seraji Property within 30 days. Pursuant to Civil Code section 3334, the court awarded reasonable use damages of $2,733 and ordered the recovery of reasonable costs, but excluded an award of attorney fees. The judgment does not actually reduce the damages awarded to a single amount, but it appears the court

7

intended the judgment to allow Seraji to recover $57,294.36 plus $5,503.01 plus $2,733 (for a total of $65,530.37).

DISCUSSION

Demirjian contends all of Seraji's causes of action (trespass, nuisance, and ejectment) are foreclosed by a three-year statute of limitations. He also asserts that, if the statute of limitations does not bar Seraji's claims, Seraji improperly received a double recovery (i.e., both an injunction to remove the encroachment and prospective damages consisting of the diminution in value of the Seraji Property).[4] Because we conclude Demirjian is correct with regard to the statute of limitations as to the trespass and nuisance causes of action, we need not sort out the mooted election of remedies issue. We reject each of the contentions raised in Seraji's cross-appeal.

*Demirjian's Appeal — Statute of Limitations as to Nuisance and Trespass Claims*

Seraji recovered damages for both nuisance and trespass. "'Nuisance is distinguishable from trespass in that the mere intentional entry on land may violate the right of exclusive possession and create a right of action for trespass, while conduct or activity cannot amount to a nuisance unless it substantially interferes with the use and enjoyment of the land.'" (*Posey v. Leavitt* (1991) 229 Cal.App.3d 1236, 1243, italics omitted.) "An encroachment is usually both a trespass and a nuisance." (*Ibid.*)

---

[4] "If plaintiffs recover damages on the premise that the trespass is permanent, they will be 'deemed to have waived the invasion and consented to the continued occupancy of the land.' [Citation.] But if they obtain an injunction which will avert further damage, they are not entitled to damages beyond the date when the injunction is granted." (*Polin v. Chung Cho* (1970) 8 Cal.App.3d 673, 678.)

"An action for trespass upon or injury to real property" must be brought within three years. (Code Civ. Proc., § 338, subd. (b).) An action for private nuisance damaging real property is governed by the same three-year statute of limitations. (*Holdgrafer v. Unocal Corp.* (2008) 160 Cal.App.4th 907, 925.) "The time of the wrongful act and the time of accrual are the same (statute runs from date of act) if the defendant's act causes immediate and permanent injury, e.g., by dispossession or erection of a structure." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 597, p. 773.) "[F]or limitation purposes the harm implicit in a tortious injury to property is harm to the property itself, and thus to *any* owner of the property once the property has been injured and not necessarily to a particular owner. Thus once the [encroachment has occurred] [citation], . . . [citation], . . . [citation], the tort is complete and the statute of limitations (unless forestalled by the 'discovery rule' or some other special doctrine) begins to run: An owner must bring its claim to court within the statutory period or the claim will be barred *for that and all subsequent owners*. Normally a subsequent owner will not be personally harmed by the tort until he or she becomes the owner, but no case has held that each new owner thus becomes entitled to a new statute of limitations against the tortfeasor. Such a rule would wholly disregard the repose function of statutes of limitations." (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1534-1535 (*CAMSI*).)

It is undisputed that Code of Civil Procedure section 338, subdivision (b)'s three-year statute of limitations applies to Seraji's trespass and nuisance causes of action, by which Seraji sought and obtained damage awards in a jury trial. It is also clear from the pleadings and the evidence at trial that Seraji did not bring suit until more than three years had passed from the 2007 construction of the encroaching wall and patio. The delayed discovery rule was not argued in this case, presumably because the encroachment was an above-ground structure in plain view. (*CAMSI*, *supra*, 230 Cal.App.3d at p. 1536 [delayed discovery rule can apply to "cases which involve nonobvious (or latent) injuries

9

to real property"].)[5] On this basis, Demirjian moved at the trial level for judgment as a matter of law.

The court denied Demirjian's motions, essentially agreeing with Seraji that he was entitled to characterize the encroachment as a "continuing" trespass/nuisance rather than a "permanent" trespass/nuisance.[6] These "distinct classifications . . . determine the remedies available to injured parties and the applicable statute of limitations." (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868 (*Baker*).)

If a trespass/nuisance "may be discontinued at any time, it is considered continuing in character and persons harmed by it may bring successive actions for damages until the nuisance [or trespass] is abated. [Citation.] Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable." (*Baker*, *supra*, 39 Cal.3d at pp. 869.) "The salient feature of a continuing trespass or nuisance is that its impact may vary over time." (*Field-Escandon*

---

[5] Evidence was introduced pertaining to the untamed nature of the Seraji Property prior to 2011, which explains why Seraji did not notice that the wall and patio were over the property line when he purchased the Seraji Property. But no evidence was provided regarding the prior owner's knowledge or actions with regard to the encroachment.

[6] The court stated this was a question of fact in denying Demirjian's motions for judgment as a matter of law, but the special verdict forms did not actually ask the jury questions that could be used to determine whether they thought the encroachment was permanent or continuing. The verdict form asked: "Did the harm or damage to Plaintiff . . . caused by Defendant . . . occur within three (3) years of the commencement of the Lawsuit on July 7, 2011?" The framing of this question essentially conceded to Seraji that the trespass and nuisance were continuing. Seraji purchased the Seraji Property in 2010; it would be strange to say Seraji (as opposed to the Seraji Property) suffered harm or damages more than three years prior to July 2011. However, Demirjian does not challenge the special verdict form as erroneous in this appeal. We therefore focus on the only argument he has preserved for our consideration: Does the evidentiary record entitle Demirjian to judgment as a matter of law with regard to his statute of limitations defense?

10

*v. DeMann* (1988) 204 Cal.App.3d 228, 234.)  "The classic example of a continuing nuisance is an ongoing or repeated disturbance . . . caused by noise, vibration or foul odor."  (*Baker*, *supra*, 39 Cal.3d at p. 869.)

Conversely, "[w]here the injury or trespass is of a permanent nature, all damages, past and prospective, are recoverable in one action, and the entire cause of action accrues when the injury is suffered or the trespass committed."  (*Rankin v. DeBare* (1928) 205 Cal. 639, 641.)  Courts must consider the circumstances of the encroachment to determine whether the trespass/nuisance should be categorized as permanent.  (See *Kafka v. Bozio* (1923) 191 Cal. 746, 750.)  For instance, a permanent classification was appropriate when the encroaching "buildings were constructed . . . with no thought of moving them elsewhere," with materials and workmanship suggesting permanency. (*Castelletto v. Bendon* (1961) 193 Cal.App.2d 64, 67.)

The encroachment of a building on a neighboring property is the archetypal case of a permanent trespass/nuisance as a matter of law; a plaintiff cannot characterize such an encroachment as a continuing trespass/nuisance to survive the application of the three-year statute of limitations.  (*Rankin v. DeBare*, *supra*, 205 Cal. at pp. 640-641[claim that building encroached on plaintiff's lot by inches barred by three-year statute of limitations]; *Castelletto v. Bendon*, *supra*, 193 Cal.App.2d at pp. 65-67 [three buildings standing in part on plaintiffs' property was permanent trespass and nuisance]; *Tracy v. Ferrara* (1956) 144 Cal.App.2d 827, 828 [demurrer properly sustained when trespass cause of action filed more than three years later; trespass consisted of "walls, foundations, pipes and vents"]; see also *Bertram v. Orlando* (1951) 102 Cal.App.2d 506, 509 ["the encroachment of a building obviously intended to be permanent upon the soil of another is a permanent trespass" subject to a three year statute of limitations].)

11

Demirjian contends that a wall and patio are not different in kind from a building, as the same intention of permanency was manifested in the manner in which the patio and wall were constructed. Demirjian's position is aided by cases holding that the encroachment of other types of physical structures amounted to permanent trespasses/nuisances that were subject to a three-year limitations period running from the time of construction or installation. (See *Williams v. Southern Pacific R.R. Co.* (1907) 150 Cal. 624, 625-628 [railroad tracks]; *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1489-1490 (*Bookout*) [raised railbed and culvert pipe]; *Spar v. Pacific Bell* (1991) 235 Cal.App.3d 1480, 1482, 1486-1488 [underground telephone lines]; *Field-Escandon v. DeMann*, *supra*, 204 Cal.App.3d at pp. 233-234 [sewer pipe].) These cases support the notion that a physical trespass need not be as large or expensive as a building to be considered permanent.

It oversimplifies the law to suggest that every "physical" encroachment is necessarily permanent. A plaintiff may bring a continuing nuisance claim with regard to trees that fell upon his land more than three years prior. (*Mattos v. Mattos* (1958) 162 Cal.App.2d 41, 42-43.) Moreover, a steadily increasing invasion of one neighbor's air space by a tilting building on the neighboring property is a continuing nuisance. (*Kafka v. Bozio*, *supra*, 191 Cal. at pp. 746-748, 751-752.) It is a question of fact as to whether a locked gate preventing safe entry to a neighbor's land is a permanent or continuing nuisance, "since it appears from the allegations in the complaint that [the gate] could have been removed at any time." (*Phillips v. City of Pasadena* (1945) 27 Cal.2d 104, 108, *id.* at pp. 105-106.)

Nonetheless, we conclude the encroachment at issue here was a permanent trespass/nuisance as a matter of law. The patio and fence are "not a continuing or recurring trespass or nuisance, which repeatedly disturbs the property, as in the case of [a] nuisance caused by the operation of an airport . . . [citation], or by the operation of a cotton gin [citation] or the operation of a slant oil drill . . . [citation]. Nor does its impact

12

on [Seraji's] property gradually increase over time, such as in the case of encroachment by a building progressively leaning over the property line of the adjacent property." (*Field-Escandon v. DeMann*, *supra*, 204 Cal.App.3d at p. 234.) This is not a case involving the "contamination of land through the dumping of toxic wastes" or similar cases of substances flowing or leaking onto a neighboring property. (*Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1090 [such cases focus on the cost to abate nuisance to determine whether it is permanent or temporary].) This case does not involve an off-property barrier to entry onto one's property (such as a fence on neighboring property). Nor does it involve a nonstructural trespass such as trees falling over a property line.

Instead, the circumstances of the construction of the encroachment and its continuation suggest permanency. Nothing about the wall and patio indicates it was intended to serve a temporary purpose or that the extent of its encroachment would vary depending on the circumstances. To the contrary, the use of concrete suggests Demirjian's intent to make the structure permanent. While true that the projected demolition cost for the encroachment is only approximately $5,000 to $10,000, one can fairly infer from the record that its construction costs were higher. No evidence suggests changes to the amount of land encroached upon over time or to other variations in the harm caused to the Seraji Property over time. The nature of Seraji's complaint must also be considered: he wants the entire encroachment permanently removed because its location affects his use of the Seraji Property. He is not concerned about a sporadic or variable use of or imposition on the Seraji Property by Demirjian.

Seraji protests this result on two grounds particular to the record in this case. First, Seraji claims his damages arose only in April 2011, when he commenced construction. But this cannot be the relevant question, or else an action could be revived at any time by simply selling property to a new owner.

Second, Seraji emphasizes the relatively low (but certainly not nominal) cost of abating the trespass/nuisance (i.e., no more than $10,000). But cases focusing on the cost of abatement typically involve productive activities that incidentally result in trespasses and/or nuisances on neighboring land. (See, e.g., *Mangini v. Aerojet-General Corp.*, *supra*, 12 Cal.4th at p. 1090 [plaintiff must present substantial evidence that contaminated condition is "both subject to remediation (or cleanup) and that the cost of cleanup is 'reasonable'"]; *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 62-63, 84-86 [costs of abating seeping black oil relevant to question of continuing versus permanent trespass/nuisance]; *Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583, 588, 593-598 [migration of wastewater from oil production activities was continuing trespass; costs of abatement relevant to damages].) Seraji does not cite any encroaching physical structure cases holding that it is a question of fact for the jury as to permanence based simply on an abatement cost that is not exorbitant. (See *Bookout*, *supra*, 186 Cal.App.4th at p. 1490 [noting determinative distinction between "solid structure" cases and "abatable pollution" cases].) Seraji's argument proves too much: mere demolition costs are likely to be reasonable in many instances of physical structure encroachments, but California cases have repeatedly held that such fact patterns cannot amount to a continuing trespass/nuisance.

Finally, Seraji claims he should be allowed to treat the encroachment as a continuing trespass/nuisance because this is a "doubtful case." Faced with a fact pattern in which mud had flowed onto a neighboring property as a result of leveling operations, our Supreme Court recognized practical difficulties for plaintiffs arising out of the doctrinal distinction between permanent and continuing trespasses/nuisances, particularly

14

with regard to statute of limitations and res judicata defenses. (*Spaulding v. Cameron* (1952) 38 Cal.2d 265, 266- 268.) "Because of these difficulties it has been recognized that in doubtful cases the plaintiff should have an election to treat the nuisance as either permanent or not. [Citations.] If the defendant is not privileged to continue the nuisance and is able to abate it, he cannot complain if the plaintiff elects to bring successive actions as damages accrue until abatement takes place. [Citations.] On the other hand, if it appears improbable as a practical matter that the nuisance can or will be abated, the plaintiff should not be left to the troublesome remedy of successive actions." (*Id*. at p. 268.)

But "[w]hile a plaintiff's election of remedies is entitled to deference in doubtful cases, that choice must nevertheless be supported by evidence that makes it reasonable under the circumstances. [Citations.] A plaintiff cannot simply allege that a nuisance is continuing in order to avoid the bar of the statute of limitations, but must present evidence that under the circumstances the nuisance may properly be considered continuing rather than permanent. [Citation.] It is only where the evidence would reasonably support either classification that the plaintiff may choose which course to pursue." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1217.) The facts of this case are not within the gray area ceded to the discretion of plaintiffs. Instead, this is a clear case of Seraji trying to evade the statute of limitations by his classification of an encroachment as continuing rather than permanent.

In sum, Seraji is foreclosed as a matter of law by the applicable statute of limitations from pursuing Demirjian for damages under either a trespass or nuisance theory. The wall and patio encroaching on the Seraji Property is a permanent trespass/nuisance.

15

*Demirjian's Appeal — Statute of Limitations as to Ejectment Cause of Action*

Exercising its equitable powers, the court ordered Demirjian to remove the encroachment within 30 days and awarded rental value damages pursuant to Civil Code section 3334. Demirjian contends that Code of Civil Procedure section 338, subdivision (b), precludes this relief, just as it precludes Seraji's trespass and nuisance causes of action. We disagree.

"No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action." (Code Civ. Proc., § 318.) This five-year statute of limitations conforms with the adverse possession doctrine: "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for five years before the commencement of the action." (Code Civ. Proc., § 321.)

Construed together, these statutes mean that "unless and until the encroacher's use of the property ripens into title by adverse possession or a valid prescriptive easement, the legal title holder's right to bring an action to recover his or her property from the encroacher *never* expires. This must be so, 'otherwise, the record owner would be unable to recover possession, and a possessor would be unable to establish title' or a prescriptive easement." (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1096 (*Harrison*).)

16

*Harrison* is directly on point. In 1994, defendant Welch "built a woodshed and placed some landscaping on her property that partially encroached on the vacant lot next door. When plaintiffs Clark and Dana Harrison purchased the vacant lot in 2001, they had the property line surveyed and discovered the encroachment. The Harrisons brought [an] action to quiet their title to the lot and to enjoin Welch's encroachment." (*Harrison*, *supra*, 116 Cal.App.4th at p. 1086.) The trial court rejected Welch's claims that she had obtained title by adverse possession or a prescriptive easement, and ordered Welch to remove much of the landscaping and the woodshed. (*Id*. at pp. 1086-1087.)

The appellate court affirmed the relief provided. "[A]n action seeking to enjoin a permanent encroachment is properly characterized as an action for the recovery of real property subject to the five-year limitation period in sections 318 and 321, rather than as an action for [trespass] subject to the three-year limitation period in section 338, subdivision (b)." (*Harrison*, *supra*, 116 Cal.App.4th at p. 1096.) Prior appellate court opinions holding or suggesting otherwise misunderstood *Williams v. Southern Pacific R.R. Co.*, *supra*, 150 Cal. 624, which merely held that actions for trespass were subject to Code of Civil Procedure, section 338, subdivision (b). (*Harrison*, at pp. 1096-1098.)

We follow *Harrison* in concluding that the equitable relief provided to Seraji pursuant to his action for ejectment was subject to a five-year statute of limitations that did not run its course in this case. Demirjian did not contend (nor could he have) that he had obtained adverse possession of or a prescriptive easement over the relevant portion of the Seraji Property. Nor does Demirjian argue that the court erred in exercising its equitable powers to order the removal of the encroachment under the circumstances of this case. Demirjian failed to brief *Harrison* or argue that particular aspects of the equitable relief provided by the court with regard to the ejectment cause of action were inappropriate. Instead, Demirjian argued that all of Seraji's causes of action were barred (and alternatively that Seraji was required to elect his remedies). We

17

therefore affirm the injunction and the $2,733 awarded by the court for reasonable use or rental value of the encroached-upon Seraji Property pursuant to Civil Code section 3334.

*Seraji's Cross-appeal: Inconsistent Special Verdict Forms and Admissibility of Exhibits*

The conclusions reached above moot most of Seraji's cross-appeal. The jury's allegedly inconsistent findings (with regard to Seraji's comparative negligence in the trespass and nuisance special verdict forms) matter not a whit because we reverse the award of damages by the jury in their entirety. Similarly, Seraji argues that two documents from city employees were erroneously excluded from the trial. These proposed exhibits allegedly demonstrated unauthorized construction activity by Demirjian in 2005. Seraji argues the exclusion of these documents from evidence was prejudicial because they could have affected the jury's damages and comparative negligence findings. The jury's findings no longer matter. And there is no argument by Seraji that the court's equitable findings and remedies were affected by its determination that these exhibits were inadmissible. Thus, these two arguments are moot.

*Seraji's Cross-appeal: Recovery of Attorney Fees*

Finally, Seraji contends he was entitled to recover attorney fees pursuant to Civil Code section 3334 (the same statute that provided the basis for the damages awarded by the court as to the ejectment cause of action). "The detriment caused by the wrongful occupation of real property . . . is deemed to include the value of the use of the property for the time of that wrongful occupation . . . and the costs, if any, of recovering the possession." (Civ. Code, § 3334, subd. (a).) Improperly citing unpublished authority (Cal. Rules of Court, rule 8.1115(a)), Seraji contends that the word "costs" in this statute includes attorney fees expended to recover possession of the real property. We reject this argument. "Statutory attorney fee awards must be *specifically* authorized by a statute."

18

(*That v. Alders Maintenance Assn.* (2012) 206 Cal.App.4th 1419, 1428, fn. omitted [rejecting request to construe statute to include attorney fees within authorized costs].)

DISPOSITION

The judgment for plaintiff Seraji on the trespass and nuisance causes of action is reversed.  The judgment is otherwise affirmed.  The trial court is directed to enter a modified judgment eliminating Seraji's recovery on the trespass and nuisance causes of action, but otherwise reinstating the original judgment.  Demirjian shall recover costs incurred on appeal.

IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.

19

## APPENDIX



DATE 4-26-11

ENCROACHMENT SURVEY

2085 AND 2095 TEMPLE HILLS DRIVE, LAGUNA BEACH

PREPARED BY: RDM SURVEYING INC
23016 LAKE FOREST DR. 409
LAGUNA HILLS, CA 92653
(949) 858-2924

SCALE 1"=10'

TEMPLE HILLS DRIVE

PROPERTY LINE

3.7'

CONC.

CONC.

15.1'

2085 TEMPLE HILLS DRIVE

POND

CONC.

2095 TEMPLE HILLS DRIVE

CONC.

CONC.

5.3'

CONC.

CONC.

CONC.

CONC.

PROPERTY LINE

3.7'